Good morning Your Honor. Good morning Mr. Lange. For the record, Attorney Raphael Castellan in conjunction with the Board of Counsel Edwin Prado represent the appellant in this case. Your Honor, an appellant whose guideline sentence was 24 to 30 months was sentenced to 8 years incarceration due to the lyrics that appeared in his rap music that he performed in the group Pacho and Cirillo. There were two rap singers. The genre of rap reflects what happens in the housing projects. Violence, firearms, murder, and that's what the songs reflected. That's the genre. Mr. Castro, perhaps you could clarify something for me. I haven't been able to find in the record whether there's any evidence whether these lyrics were simply performed by the defendant or whether they were composed and performed by him. Can you clarify that for me at all? Well, it's a group. They were performed by him, Pacho, and Cirillo. Yeah, but who composed them? That's what I'm... No, there's nothing in the record that reflects who composed them. Okay. That was my question. That is correct. That was never established by the government. Is there an English translation of everything that the court considered? The lyrics? The pre-sentence report has the English translations included. Were all of them that the court considered? Well, there were the videos, yes, but it's my understanding that the songs and the videos were considered by the court and they were all translated to the English language. But there are three works that appear to be translated into English. I think that Judge Thompson's question is, do we know whether the court considered any songs beyond those three? Well, that's the problem with my second assignment of errors is that we don't know exactly what he considered because he did mention I did my own research, but we don't know what that research is. So, in a sense, precisely that's why the second assignment of errors was raised because it was never defined what was the extent of his research. In context, though, I read that portion of the sentencing. That research could very well have meant that the court simply went in and looked at the three videos and read the three certified translations. It's just not clear, and since there was no objection to clarify it, we're stuck with the record the way it is. That is correct, Your Honor. Now, the inference that was made by the court, which is totally inappropriate, to say that the lyrics reflect what is in his head, it simply has total lack of record support. The lyrics reflect what rap music is. There's nothing. If you watch HBO every night, you're going to see some movies that are way more violent and behavior that's really far worse than what you see here or the lyrics here. That isn't a reflection of the director's state of mind. It's like Lewis told the court, this is a movie. They were play guns. We are singing what the people in the public housing live every day, and unfortunately, that is what they live. Murders, if you steal a million dollars, you get killed. If you have people that protect you, your people that protect you get shot. Firearms everywhere. Yes, in the housing projects, children grow up watching other adults armed. Are you suggesting that because the words he uttered on the video were a performance, were music, therefore they cannot be considered at all in sentencing? Well, I wouldn't go that far. I would distinguish. It seems that if you look at this case, he was punished for the lyrics. Now, the government cites some cases that are totally distinguishable, such as the Stewart case. There, the lawyer, after she got convicted and sentenced to 24 months, made some public statements that reflected that she lacked remorse and that the 24 months was really a slap in the hand. And in that case, did the Supreme Court correctly conclude that, no, those statements can be considered because they are relevant to your sentencing characteristics, you lack remorse. Would that follow if she had sung that statement, set to music? Well, if you sing that and the singing is a reflection of your state of mind related to the conduct, you could take it into account. But here, this is important. The lyrics, the music, were not generated as a result of his arrest for illegal firearms possession. There's no link between his songs that he performed as a rap performer with his partner to the actual arrest of the possession of the firearm. But you will concede, Mr. Castro, that artistic expression can be part of the sentencing calculus indicates where there is a link between that artistic expression and the defendant's state of mind. But your problem in this case is, is that as you see this record, there is no such link. That is correct. Okay. That is correct. There is no link. That is rap music. And he got punished because the judge doesn't like rap music and quite frankly, I don't think he listens to it. So he hears a music that by its very nature reflects violence, firearms, and murders to extrapolate and say, you as a performer in a video make lyrics that are violent, therefore I think you are a violent person is totally unjustified. That is clearly erroneous. This defendant had never been arrested before in his life. He doesn't have any violence in his background. He helped in the community. How can you take a defendant whose personal actual characteristics do not reflect any inclination to engage in violence and say that because you sing a song with your co-partner that talks about that, that somehow justifies eight years when the time limit is 24 to 30 months, Your Honor. He did have a Glock that he converted to be an automatic weapon. Yes. I mean, that was. And he explained, he gave an entire, he comes from the public housing projects whereas the judge correctly stated that criminals are better armed than law enforcement. When you're in that genre, these people, they perform very expensive jewelry. That's known by the audience that goes there. And they are very capable of assaulting a rap singer that has $200,000 in jewelry in his possession. So if you know that you can be assaulted by three or four people armed also with fully automatic weapons and you're one person, you have to take out three or four people with one pull of the trigger. And you have to one shot at a time. You'll be dead if you're armed that way. Counselor, clearly you're describing sort of an alternative lifestyle, an alternative reality. But isn't your argument sort of supporting the notion that there may be a link between his work, his musical work and how he lived and the possession of the particular type of gun? Well, I disagree that the music reflects how he lives. The music is rap music. And that's what rap music is all about. To say I'm going to punish you because you sing rap music and I understand that that music reflects what's in your head. There's no link, Your Honor. All rappers sing about violence, murders, possession of firearms. That's what the genre is. And that's why he was punished. And precisely because, and I again emphasize the distinction, the cases cited by the government were cases where the comments made had a direct bearing, such as a defendant that says, oh, I went into a Jewish synagogue, but that really being a Jewish synagogue had nothing to do with the crime. And we had made numerous statements to a marshal attacking Jews. The judge said, no, I'm going to hear the marshal because I don't think it's a coincidence. Your comments reflect that the synagogue, Jewish synagogue, was relevant to what you said, for you were attacking Jews personally. That's lacking here. In this case, it would be set aside. It is totally unwarranted. Thank you, Counselor. Good afternoon, Your Honors. I'd like to start, if I may, by answering a question that was posed to Defendant's Counsel. There are some indications in the record that the defendant did, in fact, write some of the lyrics that he spoke. What indications are those? In Appellant's brief before this court. In who's brief? The Appellant's brief, Your Honor. He says punishing Alvarez-Nunez because of his lyrics as a composer singer was improper. And in his defendant's sentencing memorandum before the court, he talks about his decision to write music about violent anecdotes. That's in the appendix at page 62. The music does tell us that he wrote this particular song. You're right. It's not specific. But it does say that he wrote music about violent anecdotes. And there's no finding by the district court that he composed these particular songs that the district court reviewed in which the district court said, for some reason that I suppose you'll explain to us, reflected his state of mind? No, the district court did not make a specific finding on that point, but I believe it's conceded that the defendant wrote the type of lyrics that we're talking about here today. That the defendant conceded that? Yes, because the record. His counsel has just told us that he didn't, that the record is silent on it. Sure, but I have just cited to you his sentencing memorandum. Yeah, but it doesn't say anything about these songs, as Judge Keada just pointed out. That's correct. The fact that he may have composed some songs in his career doesn't mean he wrote these songs. That is correct, Your Honor. He wrote some love songs, he says, in the record. He did also say that. So which is he referring to in the brief? The sentencing memorandum specifically references music about violent anecdotes. I don't think that can be interpreted as love songs, hopefully not. What do you say? Judge Fuste said that the songs, the lyrics of the songs, confirmed the defendant's involvement with firearms, with violence, with murders. What is there in the song that confirmed the defendant's involvement with murders? I mean, isn't that just flat wrong and over the top? I don't think it's flat wrong, Your Honor. I think the key word there is confirm. We're talking about these lyrics only because the defendant did, in fact, break the law, did, in fact, possess an automatic weapon. If you confirm something, you're establishing that it's true. What involvement did this defendant have with murders? I do think murders might have been a little bit of an overstatement, but I think that the court is referring to the fact that automatic weapons with extended magazines, with huge amounts of ammunition, are possessed for the purpose of using them. That may be, but what do the videos have to do with it? The fact that a singer sings about violence or sings about the use of firearms, how does that confirm the singer's involvement with firearms or with violence or with murders? Judge Fusay at another point in his sentencing said that they showed his liking for violence. That's the gap that I'm struggling to close. The fact that an artist performs songs or a play and the lines make some mention of some violent act or some criminal act, how does that show, unless we're prepared to punish the mere expression of artistic works, how does that show that that confirms that that particular artist has a liking for or an involvement in the use of those firearms? Let's be clear. No one here is advocating the punishment of the singing. That's not what's happening here. How else can you say that it conforms his involvement with? If an actress performs the part of Lady Macbeth and appears on stage, recites the lines we all know, and appears with a bloody dagger, does that confirm her involvement in murder? Does that confirm her liking for violence? If she wrote and performed those kinds of scenes over and over and then took those from abstract beliefs and made them concrete by actually committing the type of crime described repeatedly, then yes, we would argue that that is relevant. Murders? He paid the murders? Lady Macbeth, I was responding to his hypothetical. Well, I think Lady Macbeth had some involvement in murder. Correct. And covering it up, so we would sentence the actress to a longer period? If she had actually taken those abstract expressions and made them concrete by committing the crime in question, as defendant did here. But then you're sentencing her for committing the crime. That's not what happened here. He committed a crime in possession of a gun. The judge then said, I'm giving him way more years because his lyrics confirm his involvement with murders. Your Honor, we would submit that the court was sentencing him for the crime that he committed. We would not be here today if he had not actually possessed a machine gun with extended magazines and with a surfeit of ammunition. Shouldn't the judge make clear that was the guideline sentence? The judge was not talking about, the judge was talking about the lyrics justified the huge. I don't think that's the case. I believe he was saying, here we have confirmation of what was in the defendant's head. And the reason the word confirmation is important is because it's not the only evidence of what we have in the defendant's head. What the judge said is his involvement, as shown in these lyrics, justifies a variance, a major variance, major. And then proceeded to more than triple the top of the guideline range. Yes, there is, in fact, a significant variance in this case. However, the government would submit that that was not based purely or even the majority based on the lyrics. Because he talked about a variety of factors. That's true, but the sentencing transcript, which I suspect all three of the judges have read completely, is absolutely dominated by the judge's comments about the lyrics of the songs and about the defendant's performance of those lyrics. It does make up a significant portion of the record, but we would submit that that's because the defendant argued about that. It had to be discussed at the sentencing hearing. Well, it's because the prosecution lit this fire, let's be clear. This all started with the prosecution urging an upward variance precisely because of the lyrics in the song. The government did ask for an upward variance, partially because of the confirmation in the lyrics of defendant's violent tendencies, disrespect for the law. When you talk about his violent tendencies, he was, what, almost 40 years old? I believe he was 34. Okay, 34. His criminal history rating was 1? It was 0. I do believe there were prior arrests, but they were old enough that they didn't count for any criminal history awards. But he had a criminal history category of 1, which is the lowest you can get. Correct. But I would point out that the defendant asked the court to take into account, he said the court can take judicial notice that defendant is a high-profile member of the Juan Amado's housing project. He asked the court to consider that he tries to be a role model, that children look up to him, that he's a kind of hero in the community. And once you've asked the court to consider that, I submit that it's not reasonable for the court not to consider how he got there, why he's being admired, and it's because he's glorified the possession and use of illegal, automatic firearms, showing disrespect for the law, and he's done that to aggrandize himself. How do you distinguish between glorifying as opposed to portraying life in the housing project? How is that different from country music singers singing about life and broken hearts? Or how is that different from someone who helped work on The Godfather or The Departed? Where do you draw the line? I think that question is why the government wanted to show the video at the sentencing hearing. Because I think when you watch that video, and I'm not sure if your honors have, you can see the way in which the violence is portrayed. How is that different from the scene in The Godfather, the baptismal scene? That's the only scene in The Godfather, the baptismal scene. You're asking us specifically to punish for artistic expression. When I watch that video, I see an artistic expression that I personally find distasteful. But that's my judgment as to what type of music I like. It's not my judgment as to whether that's socially redemptive or whether that should be punished. The First Amendment tells me that within very broad guidelines, which aren't even approached here, that that type of expression is permissible. Of course that type of expression is permissible, and that's why the defendant's partners are not here before this court, because they did not commit a crime, but defendants did. Did your honors have any further questions? I think we're done. Thank you. The next matter, case number 151998, United States v. Paul Marino. Thank you.